**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMIR SADEK, individually, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:26-cv-13139 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| THE UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Amir Sadek ("Mr. Sadek"), by and through his undersigned counsel, for his Complaint against Defendant, The University of Chicago ("the University"), alleges as follows:

**NATURE OF ACTION**

1. This Complaint is brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 *et seq*. ("USERRA"), Illinois Services Employment and Reemployment Rights Act, 330 ILCS 61 *et seq*. ("ISERRA"), and Federal and State common law.

2. Pursuant to 38 U.S.C. § 4323(h)(1), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]."

**JURISDICTION AND VENUE**

3. Count I of this complaint arises under USERRA and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case arises under the laws of the United States, and specifically pursuant to USERRA, 38 U.S.C. § 4323(b).

4. Count II of this complaint arises under ISERRA, 330 ILCS 61 *et seq*. The jurisdiction of this court as to this Count is conferred by 28 U.S.C. §1367(a).

5. Venue is proper in this judicial district pursuant to 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b), as the Defendant maintains its principal place of business in this district and all or a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

6. Plaintiff Amir Sadek is a citizen of the United States and a resident of the state of Illinois. At all times relevant, Mr. Sadek served as a member of the U.S. Army Reserve ("USAR"). At all times herein mentioned, Plaintiff was a qualified employee and member of the uniformed services as defined by 38 U.S.C. §4303(3) and (16).

7. Defendant The University of Chicago is an Illinois not-for-profit corporation with its principal place of business located at 5801 South Ellis Avenue, Chicago, Illinois 60637. At all times relevant, the University was and is an "employer" for the purposes of 38 U.S.C. § 4303(4)(A) and is subject to suit under USERRA.

8. At all times relevant, Defendant's employees, managers, and agents, including but not limited to Dr. Amittha Wickrema, Diane Ostrega, Michael Fitzpatrick, Rachel Betts, Jesenia Duque, Mylah Diffay, Corinne Ciocca, Ashleigh Grant, and Ryan Donnellan, acted within the course and scope of their employment and agency with the University.

9. Whenever and wherever reference is made to individuals who are not named as a defendant in this action, but were employees/agents of defendants, or any of them herein, Plaintiff is informed and believes that such individuals at all times acted on behalf of defendants named in this action within the scope of their respective employments and agencies.

## GENERAL FACTUAL ALLEGATIONS

10. Mr. Sadek was hired by the University in April 2021 and began working as a full-time Cell Therapy Technician and then Senior Cellular Manufacturing Technologist in January

2022. Prior to his employment, Mr. Sadek served honorably in the Michigan Army National Guard (MIANG) as a Specialist (paygrade E-4). During his employment, he transferred into a USAR aviation unit, making him eligible for flight school, and was promoted to the rank of Warrant Officer (paygrade W-1)

11. In the first half of 2022, Mr. Sadek received an "Exceeds Expectations" performance review from Defendant.

12. In mid-2022, Mr. Sadek informed his supervisor, Ms. Diane Ostrega, of his intent to apply for U.S. Army flight school, which would require an extended period of active-duty military leave. Following the disclosure, her conduct toward him became hostile. This included assigning him menial tasks, such as daily individual inventory room audits that were not performed on his peers, disproportionately increasing his workload compared to his peers, subjecting him to unwarranted micromanagement, and speaking to him in a condescending manner.

13. This animus escalated on December 15, 2022, when Ms. Ostrega's supervisor, Dr. Amittha Wickrema, summoned Mr. Sadek to a meeting and offered him a temporary, non-permanent position in separate research lab under different supervisors, which Mr. Sadek declined via email on December 20, 2022, in order to remain in his permanent position.

14. Nearly a week later, Dr. Wickrema convened a meeting on December 21, 2022, and explicitly threatened to obstruct Mr. Sadek's federally protected rights, stating:

> *"I don't understand why we should cover a military leave… This is not a family emergency or medical emergency, it's a planned event and I don't know why we should cover it. Don't come a few weeks before your school date and tell us that you have to go and force us to give you the leave, don't put us in this position. We will not allow it. We will do everything we can to stop it… When you get the schedule give it right away to Diane and if you keep getting drills on weekdays then you can't work with us."*

15. Also in that meeting, Dr. Wickrema further stated that the University would "find a way to get around" any government or HR requirement to approve the leave, adding that the University does not offer "charity for me or for the military."

16. On February 27, 2023, Ms. Ostrega instructed Mr. Sadek to remain at the facility for a twelve-hour shift to wait for a courier package, refusing his request to roll over his extra hours or leave early the following day, which was a standard practice applied to his non-military colleagues. Mr. Sadek contacted the University's Human Resources ("HR") department to report the ongoing harassment and hostility.

17. The next day, on February 28, 2023, Mr. Sadek engaged in further protected activity by filing a formal complaint with the U.S. Department of Labor, Veterans' Employment and Training Service ("DOL-VETS"), and informing HR of his filing.

18. On May 9, 2023, the University's internal Employee & Labor Relations ("ELR") department concluded its investigation with a finding of "no violations" of University policy.

19. Immediately following this finding, on or about May 24, 2023, the University retaliated against Mr. Sadek by issuing him his first-ever negative performance review. The review, scheduled with less than two hours' notice, contained false and pretextual criticisms such as poor communication and an uncooperative attitude, which had not been raised prior to his HR and DOL-VETS complaints.

20. Additionally, during the review, Ms. Ostrega stated that she had accidentally deleted Mr. Sadek's positive written self-evaluation comments from the electronic system and could not restore them.

21. On June 2, 2023, Mr. Sadek submitted a detailed rebuttal that included ten supporting exhibits challenging the negative review. The University and its HR department refused

to amend or rescind the retaliatory review, with HR representative Jesenia Duque stating it "would stay as it is" and pressuring Mr. Sadek to accept the false review or risk losing his merit pay increase.

22. The University's retaliation continued in or around July 2023, when Defendant's HR Director Mr. Michael Fitzpatrick threatened Mr. Sadek with "photographic evidence" of him sleeping on the job. Mr. Sadek denied this and stated his belief that any such photo would be of him praying, a protected religious activity. Ms. Ostrega later repeated this threat, warning Mr. Sadek to "be careful who to complain to" to intimidate him from cooperating with the active DOL-VETS investigation.

23. On September 13, 2023, the Department of the Army issued orders directing Mr. Sadek to report for active-duty military training beginning October 22, 2023, for Warrant Officer Candidate School and flight school. Mr. Sadek provided the documents to the University, and his leave was approved on October 4th.

24. While Mr. Sadek was on active duty, the University engaged in a pattern of unlawful interference. On February 5, 2025, Mr. Fitzpatrick sent Mr. Sadek a "Notice of Non-Compliance" for his failure to submit monthly timesheets, an administrative task he was not required to perform while on active military duty.

25. On May 22, 2025, Mr. Fitzpatrick sent Mr. Sadek a letter via email stating that his approved leave had expired, that his continued absence was unexcused, and that the University would terminate his employment for job abandonment if he did not submit updated orders or return to work by May 30, 2025. This threat was made despite the University having approved his open-ended military leave and being fully aware that Mr. Sadek was on active duty in a high-intensity training environment. These threats caused Mr. Sadek significant distress and interfered with his

ability to focus on his military duties.

26. Mr. Sadek responded on May 30, 2025, confirming that he remained on active-duty orders, that his training was ongoing, and that he was entitled to a ninety-day window to apply for reemployment following his release from active duty.

27. On or about October 14, 2025, Mr. Sadek was reemployed by the University. Upon his return, the University failed to reinstate him to the position of pay he would have attained with reasonable certainty but for his service. The University's own analysis calculated that Mr. Sadek was entitled to merit increases of 2.5% and 2.25% for the years he was on leave, yet it failed to correctly apply these increases to his base salary in Workday.

28. Upon Mr. Sadek's return, the University also engaged in systemic and unreasonable delays in restoring his retirement benefits under the Employee Retirement Income Plan ("ERIP"), drag-rolling the process for over seven months without resolving his contributions.

29. In May 2026, the University's Retirement Manager, Corinne Ciocca, issued a final, unlawful decision, informing Mr. Sadek in writing that the University would not permit him to make up his mandatory 3% employee contributions to the ERIP and would not restore the corresponding 4% employer core contributions for his period of military service. Ms. Ciocca unilaterally closed Mr. Sadek's benefits ticket (No. UC06742532) on May 21, 2026, to force him to accept the exclusion of these protected pension benefits.

30. Mr. Sadek immediately reopened the ticket on May 21, 2026, presenting eleven specific questions to the retirement team demanding that the University identify the precise text in the ERIP or Summary Plan Description ("SPD") that authorized the exclusion of mandatory employee and core employer contributions, and pointing out that such exclusions directly violate USERRA's continuous-employment mandate.

31. Instead of complying with its federal obligations, the University engaged in further bad-faith stonewalling, failing to provide any substantive response to Mr. Sadek's questions throughout the months of June and July 2026, despite multiple written follow-ups from Mr. Sadek on June 17, 2026, and July 4, 2026, thereby keeping his pension restoration in an indefinite "Work in Progress" administrative limbo.

32. The University based its refusal to restore these pension benefits on Section 4.7 of its ERIP document and a legally erroneous interpretation of Internal Revenue Code § 414(u), which violates the plain language of USERRA's implementing regulations at 20 C.F.R. § 1002.262, which explicitly grants service members the right to make up pension contributions following a period of military leave.

33. Ms. Ciocca admitted to Mr. Sadek that the University's unlawful pension position had been reviewed and approved by both its internal and external legal counsel, demonstrating that its ongoing exclusion of his pension benefits and its administrative stonewalling were not a mistake but a knowing, willful act committed with reckless disregard for its obligations under federal law.

## CLAIMS ALLEGED

### COUNT I

### Violations of 38 U.S.C. §4301 *et seq*.

34. Plaintiff hereby alleges and incorporates all paragraphs 1-33 above by reference herein.

35. USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. §4301(a)(3).

36. Section 4311 of USERRA protects persons who serve in the uniformed services from acts of discrimination and reprisal; for example, a person who is "a member of, performs, has performed . . . or has an obligation to perform service in a uniformed service shall not be denied

. . . retention in employment or. . . any benefit of employment by an employer on the basis of that membership . . . performance of service, or obligation." 38 U.S.C. §4311(a).

37. Benefit is defined as:

> The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."

38 U.S.C. §43034(2). Section 4311(b) prohibits an employer from taking adverse action against a service member because they have taken action to enforce a protection afforded under the Act.

38. Section 4311(b) prohibits an employer from taking adverse action against a service member because they have taken action to enforce a protection afforded under the Act.

39. "An employer shall be considered to have engaged in actions prohibited . . . if the persons' membership, service, . . . or obligation for service in the uniformed services is a motivating factor in the employer's action . . . . 38 U.S.C. § 4311(c)(1).

40. Sections 4312 and 4313 of USERRA require an employer to promptly reemploy a returning service member in the position of seniority, status, and pay they would have attained with reasonable certainty but for their military absence.

41. Section 4318 of USERRA requires that a reemployed service member be treated as not having incurred a break in service for pension purposes, and mandates that the employer permit the employee to make up missed contributions and fund all corresponding employer contributions that would have been made during the period of service.

42. "The employee is not required to ask for or get his employer's permission to leave to perform service in the uniformed services." 20 C.F.R. § 1002.87

43. Plaintiff's protected status as a member of the USAR was a substantial and motivating factor in Defendants' denial of Plaintiff's benefits of employment without good cause, including but not limited to, subjecting Mr. Sadek to adverse terms and conditions of employment, issuing a negative performance evaluation, and threatening termination while he was on active-duty orders, failing to reinstate Mr. Sadek to his correct escalator rate of pay upon his return, by refusing to permit him to make up his mandatory 3% employee pension contributions, by refusing to fund his 4% employer core pension contributions for his period of service, and by delaying the administration of his retirement restoration for over nine months.

44. Mr. Sadek's protected activities by filing internal and external complaints were additional substantial and motivating factors in the University's adverse actions and denials of benefits.

45. The University's violations of USERRA were committed knowingly and with reckless disregard for Mr. Sadek's statutory rights, as demonstrated by management's explicit threats to block his leave, HR's threats of termination during his active duty, and the retirement department's admission that its position denying his pension benefits was reviewed and approved by internal and external legal counsel.

46. As a direct and proximate result of the conduct of defendant as set forth in this count, Plaintiff has suffered injuries and damages including and not limited to, loss of past earnings and benefits, and loss of future earnings and benefits, all to his damage in an amount to be proven at trial.

47. Plaintiff alleges such violations of USERRA were knowing and requests liquidated damages in an amount equal to the amount of his lost wages and other benefits, or $50,000.00, whichever is greater, pursuant to 38 U.S.C. § 4323(d)(1)(D).

48. Pursuant to 38 U.S.C. §4323(h), Plaintiff further requests an award of reasonable attorneys' fees, expert witness fees, and other litigation expenses.

**COUNT II**
**Violations of ISERRA, 330 ILCS 61 *et seq*.**

49. Mr. Sadek realleges and incorporates by reference the allegations contained in Paragraphs 1 through 48 as if fully restated herein.

50. The Illinois Service Member Employment and Reemployment Rights Act (ISERRA), 330 ILCS 61/1-1 et seq., provides independent state-law protections, strict liability employment standards, and expanded civil remedies for Illinois service members that exceed the remedies available under federal law.

51. ISERRA expressly incorporates USERRA sections 4304, 4312, 4313, 4316, 4317, and 4318 into state law. 330 ILCS § 61/5-5

52. ISERRA's stated public policy is to safeguard and promote military service by minimizing disadvantages to military service in civilian careers and prohibiting discrimination against, and interference with, military service. 330 ILCS § 61/1-5.

53. Section 1-15 expressly incorporates USERRA section 4311 and thereby protects persons who perform military service from acts of discrimination, stating that a person who is a member of, performs, has performed, or has an obligation to perform military service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, performance of service, or obligation. 330 ILCS § 61/5-15.

54. Under ISERRA, "benefit" includes, but is not limited to, the "terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest, including wages or salary for work performed, that accrues by reason of an employment

contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." 330 ILCS § 61/1-10.

55. Section 1-15 of ISERRA incorporates by 38 U.S.C. § 4311, which prohibits an employer from discriminating in employment against, or taking any adverse employment action against, any person because such person has taken action to enforce a protection afforded under the Act, has testified or otherwise made a statement in or in connection with any proceeding under the Act, has otherwise participated in an investigation under the Act, or has exercised a right provided for in the Act. 330 ILCS § 61/5-15.

56. As incorporated by 38 U.S.C. § 4311, an employer is considered to have engaged in actions prohibited under ISERRA if the person's military service or protected activity was a motivating factor in the employer's action. 330 ILCS § 61/5-15.

57. Section 5-5 of ISERRA requires an employer to provide reemployment rights and benefits to a returning service member that are no less than those provided under federal law, which includes prompt reemployment in the position of seniority, status, and pay they would have attained with reasonable certainty but for their military absence. 330 ILCS § 61/5-5.

58. Section 5-5 of ISERRA imposes strict liability protections for performance reviews, mandating that an employer's performance review system shall not negatively impact a service member's performance review due to military leave, and requiring that for any period of military leave, the service member shall be rated as "meets expectations" or at the average rating of the three years preceding the military leave, whichever is higher. 330 ILCS § 61/5-5(3).

59. Section 5-5 of ISERRA, which incorporates 38 U.S.C. § 4318, mandates that a

reemployed service member's pension and retirement rights must be restored in a manner no less than those provided under federal law, requiring that the employee be treated as not having incurred a break in service for pension purposes, be permitted to make up all required and elective employee contributions, and receive all corresponding core and matching employer contributions that would have been funded during the period of service. 330 ILCS § 61/5-5.

60. Pursuant to 330 ILCS § 61/15-20(a)(3), a prevailing plaintiff is entitled to recover punitive damages of up to $50,000 per violation of the protected rights of the service member.

61. There is no Statute of Limitations for a private right of action brought pursuant to ISERRA. 330 ILCS § 61/25-5

62. The University, through its managers and agents, exhibited maliciousness and reckless indifference to Mr. Sadek's protected rights by committing multiple, distinct statutory violations of ISERRA.

63. Dr. Wickrema and Ms. Ostrega committed a distinct violation of ISERRA on December 21, 2022, by explicitly threatening to obstruct Mr. Sadek's military leave, stating they would do everything they could to stop his flight school orders, and warning him that he could no longer work for the department if his drills fell on weekdays.

64. Ms. Ostrega and Ms. Duque committed a second distinct violation of ISERRA on May 24, 2023, by issuing a retaliatory negative performance evaluation containing false and unsubstantiated criticisms, designed to negatively impact Mr. Sadek's professional record and merit pay eligibility shortly after he filed his HR and DOL-VETS complaints.

65. Ms. Ostrega and Mr. Fitzpatrick committed a third distinct violation of ISERRA in July 2023 by weaponizing an illegally obtained photograph of Mr. Sadek engaged in quiet prayer to accuse him of sleeping on the job and threatening his termination to deter him from cooperating

with the active federal investigation.

66. Mr. Fitzpatrick committed a fourth distinct violation of ISERRA on May 22, 2025, by sending a written notice threatening Mr. Sadek with immediate termination for job abandonment while he was actively serving on Title 10 military orders.

67. The University's benefits and retirement departments committed a fifth distinct violation of ISERRA from October 2025 through the present by failing to properly reemploy Mr. Sadek at his correct escalator pay rate, refusing to restore his mandatory employee and core employer retirement benefits under the ERIP, and unilaterally closing his benefits ticket to force compliance with an unlawful policy.

68. Pursuant to 330 ILCS 61/5-5, Mr. Sadek is entitled correction of his performance evaluations and ratings, which mandates that an employer's performance review system cannot negatively impact a service member's review due to military leave, and requires that he be rated at least as "meeting expectations" or at his higher three-year pre-leave average rating of "Exceeds Expectations."

69. Mr. Sadek seeks a court order directing the University to expunge all retaliatory ratings and negative comments from his personnel file, to adjust his performance evaluation ratings for the fiscal years covering his military leave to reflect his pre-leave average of "Exceeds Expectations," and to calculate and pay all retroactive merit increases tied to those adjusted ratings.

70. Pursuant to 330 ILCS § 61/5-5, Mr. Sadek is entitled to full restitution and make-whole relief for the University's unlawful interference with his accrued benefits and reemployment status, including the recovery of all lost wages, unpaid salary differentials, and the full restoration of his mandatory 3% employee pension contributions and corresponding 4% employer core pension contributions under the ERIP.

71. Pursuant to 330 ILCS § 61/15-20, Mr. Sadek is entitled to recover award actual damages, punitive damages, and any other relief that the court deems proper, including attorneys' fees, expert witness fees, and litigation costs and expenses incurred in bringing this action to enforce his protected state-law rights.

**JURY DEMAND**

72. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable as of right by a jury in this action.

**REQUEST FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff prays for relief against Defendants, and each of them, as follows:

A. Declare that the acts and practices complained of herein are unlawful and are in violation of USERRA, 38 U.S.C. § 4301, *et seq.* and 330 ILCS 61, *et seq.*;

B. Require that Defendant fully comply with the provisions of USERRA and the ISERRA by providing Plaintiff all employment benefits denied to him as a result of the unlawful acts and practices under USERRA and ISERRA described herein;

C. Fees and expenses, including attorneys' fees and costs pursuant to 38 U.S.C. §4323(h) and 330 ILCS 61/15-20 respectively;

D. Award Plaintiff prejudgment interest on the amount of lost wages or employment benefits found due;

E. Order that Defendant pays compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits, or $50,000.00, whichever is greater, pursuant to 38 U.S.C. § 4323(d)(1)(D). suffered by reason of Defendant's knowing violations of USERRA;

F. Order that Defendant pays punitive damages pursuant to 330 ILCS 61/15-20;

G. Grant an award for costs of suit incurred; and,

H. Grant such other and further relief as may be just, and proper and which Plaintiff may be entitled to under all applicable laws.

Respectfully Submitted,

Dated: October 26, 2026

PILOT LAW, P.C.

By: _/s/ *Brian J. Lawler*_____
BRIAN J. LAWLER

BARTOLIC LAW

By: _/s/ *Michael Bartolic*_____
MICHAEL BARTOLIC

Attorneys for the Plaintiff